IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHRISTOPHER W. WEBB,            )
                                )
            Plaintiff,           )
                                )
v.                              )        No. CIV 10-459-FHS-SPS
                                )
CINDY STEVENS,                  )
                                )
            Defendant.           )

**OPINION AND ORDER**

    This action is before the court on a motion for summary judgment by the remaining defendant, Bryan County Jail Nurse Cindy Stevens, and the court's own motion to consider dismissal of this action as frivolous under 28 U.S.C. § 1915. The other defendants in this case, Bryan County Sheriff Bill Sturch, Bryan County Jail Administrator John Kidman, Bryan County Jail Lieutenant Mike Osborne, and Bryan County Commissioner Monty Montgomery all were previously dismissed for plaintiff's failure to allege their personal participation in the alleged constitutional violations. [Docket No. 40 at 5].

    Plaintiff alleges his constitutional rights were violated when he was denied pain medication and medical testing for his kidney and liver pain. His symptoms of vomiting, clay-colored feces, fatigue, dark urine, labored breathing, and blood in his spittle also allegedly were not treated. He further claims Defendant Nurse Stevens told him he would have to pay in advance for medical services, and she refused to give him copies of his medical requests or the address for the medical provider to report complaints.

    The record shows that plaintiff was booked into the Bryan County Jail on July 22, 2009. [Docket No. 46-1 at 1]. On July 31, 2009, he submitted an Inmate Health Service Request, complaining of the following problems:

    (1) coughing up blood & sides hurting bad
    (2) believe I have blood clot in my leg moving up through my system--need to go to hospital
    (3) can't sleep at all--very anxious--anxiety

> Three different problems--none related to each other
> (NOTE) #2--had this before

[Docket No. 46-2 at 4].  Plaintiff was evaluated by the jail medical staff, and a test strip showed he was not coughing up blood.  *Id.*  Physician Assistant Jeff Williams prescribed medication.  *Id.*

On August 5, 2009, plaintiff submitted another health service request, again stating he was coughing up blood and that he also had a blood clot moving through his leg and needed to see a doctor.  [Docket No. 46-2 at 5].  Defendant Stevens alleges plaintiff was seen by P.A. Williams the next day, and another test strip was negative for blood.  *Id.* at 6.  Williams' assessment was that plaintiff had heartburn and post-pulmonary edema.  *Id*.  The treatment plan was to monitor plaintiff for chest pain or shortness of breath and to continue his medication, but with an increased dosage.  *Id.*

Plaintiff submitted another request for health service on August 26, 2009, complaining that he was "feeling really depressed" and needed to see a doctor as soon as possible.  *Id.* at 7.  Williams evaluated him and assessed him as depressed with a urinary tract infection.  *Id.* at 7-8.  Plaintiff was prescribed Zoloft, Bactrim, and Motrin.  *Id.* at 8.

On September 30, 2009, plaintiff submitted another request for health services, asking to be added to the diabetic list for his extreme weight loss.  *Id.* at 9.  The October 6, 2009, plan in response to his complaint was listed as "no change."  *Id.*

According to Defendant Stevens' affidavit, she is a licensed practical nurse who was hired by the Bryan County Jail on October 28, 2009, which the court notes was three months after plaintiff arrived at the jail.  [Docket No. 46-3 at 1].  Her duties include processing the inmates' heath service requests, performing necessary nursing assessments, ordering medications and equipment, and coordinating care with the jail's physician assistant Jeff Williams or with outside providers.  *Id.*  Williams visits inmates in the jail one day a week and is available by telephone for consultation at all times.  He prescribes any medications for the inmates.  *Id.* at 1-2.

On November 21, 2009, plaintiff complained of not feeling good, so Defendant Stevens took his vital signs. *Id.* at 10. All of his vital signs were within the normal ranges. *Id.*

Plaintiff submitted a health service request on December 14, 2009, stating he still was spitting up blood, and it was getting worse. *Id.* at 11. The physician assistant ordered a sputum culture as soon as possible, and the sample was obtained and sent to Laboratory Corporation of America for evaluation. *Id.* at 11-14. The test results, reported on December 24, 2009, was negative for infection and showed routine respiratory flora. *Id.* at 14. Plaintiff was advised of the results on January 27, 2010. *Id.* at 15.

On January 26, 2010, plaintiff submitted a health service request, asking to increase his dosage for Zoloft. *Id.* The next day Defendant Stevens advised him that if he was still feeling depressed, he should consult with his attorney to make a mental health appointment. *Id.*

Plaintiff submitted another health request on February 18, 2010, complaining of severe heartburn, acid reflux, and blood clot issues. *Id.* at 16. On that date plaintiff's medications were withheld for one day, because his medications had been discovered in other inmates' cells. [Docket No. 46-3 at 2]. Stevens instructed him not to give his medications to other inmates, and his medications were reinstated on February 19, 2010. [Docket No. 46-2 at 16]. The physician assistant adjusted plaintiff's medications on March 2, 2010. *Id.* at 17.

On April 28, 2010, plaintiff sent a health service request stating he had excruciating pain in his lower to upper back that was caused by slipped disks. *Id.* at 18. He also stated he had a scalp inflammation, because he could not get lotion for dry or irritated skin. *Id.* Defendant Stevens advised plaintiff that she would put him on the list for the physician assistant to visit. *Id.* On May 12, 2010, the P.A. determined plaintiff had muscle spasms and seborrheic dermatitis, and medication was prescribed. *Id.* at 19.

On June 25, 2010, plaintiff requested a blood test to determine whether he had been

exposed to Hepatitis C or other viruses from razors used by the inmates. *Id*. at 20. He did not complain of any specific symptoms. *Id*. Defendant Stevens' response advised that the razors were kept in separate bags, and plaintiff could have a blood test if he could pay for it. *Id.*

He submitted another request on October 12, 2010, inquiring about a change in his medications. *Id*. at 21. Stevens advised that he would see the physician assistant that day. *Id.* P.A. Williams assessed plaintiff, but he had no specific complaints of pain that day, only chronic low back pain. *Id*. at 22. Plaintiff was prescribed medication for one week, and he told Williams he wanted to send a complaint to the health care company. *Id*.

Plaintiff requested treatment for severe back pain and headaches on December 8, 2010, claiming his previous request for medical care had not been answered. *Id*. at 23. The response advised that this was plaintiff's first request on this issue, and an appointment with the physician assistant would be set. *Id.* The P.A. saw plaintiff on December 21, 2010, and prescribed Motrin and Flexeril for five days. *Id.* at 24. Plaintiff also was advised that he could perform neck massage with a towel. *Id.* Plaintiff was transferred from the Bryan County Jail to another facility on December 30, 2010. [Docket No. 46-4].

The Tenth Circuit Court of Appeals has set forth the standard for claims concerning alleged deliberate indifference to a pretrial detainee with respect to medical needs:

> Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment. Thus, [a pretrial detainee's] inadequate medical attention claim must be judged against the "deliberate indifference to serious medical needs" test of *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). . . .
>
> The analysis under *Estelle* is two-pronged. The initial question is whether there is evidence of "serious medical needs." A constitutional violation only occurs when a government official's "deliberate indifference" is exhibited toward such needs.

*Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (citations omitted).

Where there is evidence of a "series of sick calls, examinations, diagnoses, and

medication . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). Here, it is clear that Defendant Stevens responded promptly to plaintiff's requests for medical services, and his complaints were addressed either by Nurse Stevens or the physician assistant. Therefore, plaintiff has failed to demonstrate that Stevens was deliberately indifferent to his serious medical needs.

Based on the foregoing reasons the court finds the allegations in plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals consistently has held that bald conclusions, unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** this action is, in all respects, DISMISSED as frivolous, pursuant to 28 U.S.C. § 1915(e)(2).

IT IS SO ORDERED this 21st day of March, 2013.

Frank H. Seay
United States District Judge